UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS M. WILMORE, JR.

    Plaintiff,                              Civil Action No. 12-14532

v.                                        HON.  PATRICK J. DUGGAN
                                             U.S. District Judge
                                             HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Louis M. Wilmore, Jr. ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

Plaintiff applied for DIB August 27, 2009, alleging disability beginning on April 1, 2009 (Tr. 99-100). After the initial denial of benefits, Plaintiff requested an administrative

hearing, held on February 3, 2011 in Chicago, Illinois before Administrative Law Judge ("ALJ") Mary Ann Poulose (Tr. 23). Plaintiff, represented by attorney Donald Shiffman, testified by video conference (Tr. 27-50). Vocational Expert ("VE") Julie Lynn Bubbles also testified (Tr. 51-52). On April 28, 2011, ALJ Poulose found Plaintiff not disabled (Tr. 19). On September 28, 2012, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the final decision on October 15, 2012.

## BACKGROUND FACTS

Plaintiff, born August 7, 1945 was 65 on the date of the ALJ's decision (Tr. 19, 99). He completed two years of college (Tr. 125) and worked previously as a machinist (Tr. 121). He alleges disability due to cognitive problems and incontinence (Tr. 120).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He currently lived with his wife and two adult children (Tr. 27). He retired from his job as an automotive machinist in April, 2009 (Tr. 28). He estimated that his work required him to stand up to 70 percent of the workday (Tr. 28). He accepted a buyout from General Motors in 2009 due in combination to worsening health conditions and his employer's financial instability (Tr. 29). Plaintiff experienced foot and knee problems due to diabetic neuropathy (Tr. 29). He took insulin twice a day (Tr. 29). In addition, he required frequent bathroom breaks due to incontinence (Tr. 29). Prior to working as a machinist, Plaintiff worked in a general store for 20 years, adding that the job did not require him to lift more

than six pounds (Tr. 31-32).

Plaintiff held a current driver's licence and did not experience significant problems in self care activities except those requiring balancing (Tr. 32). He baked chickens and did not have problems putting dishes in the dishwasher (Tr. 33). He denied laundry chores, vacuuming, taking out trash, or yard work (Tr. 33). He continued to grocery shop and could lift a gallon of milk (Tr. 34). He was unable to walk more than the length of a block or sit for more than 45 minutes without breaks (Tr. 35). He had a cane, but it had not been prescribed by a doctor (Tr. 37). He denied manipulative limitations (Tr. 37-38). Cold weather exacerbated knee problems (Tr. 38). He avoided using stairs, noting that when climbing stairs, he changed steps "sideways . . . one at a time" (Tr. 38). He currently took medication for hypertension, hyperlipidemia, diabetes, and a heart condition (Tr. 39-40). He was treated by Dr. Joseph Levy at the Veterans' Administration ("VA") Hospital (Tr. 40).

Plaintiff experienced intermittent foot tingling with a burning sensation and numbness (Tr. 42). His need for frequent bathroom visits created nighttime sleep disturbances and constricted his daytime activities (Tr. 43). He required a bathroom visit every 45 minutes during the day and every two hours during the night (Tr. 45). He opined that incontinence was due to kidney problems brought on by diabetes, adding that he had recently been contacted by the VA hospital to discuss the results of a recent retinopathy screening (Tr. 44-45). Eight months prior to the hearing, he underwent a procedure to his right eye (Tr. 46).

In response to questioning by his attorney, Plaintiff reported that he experienced some degree of hearing loss accompanied by ringing in the left ear (Tr. 46-47). Daytime fatigue required him to take two naps each day (Tr. 49). He experienced some degree of Post Traumatic Stress Disorder ("PTSD") but coped with the condition by going to horse races where he would "holler and . . . let it out" (Tr. 50).

    **B.  Medical Evidence**

    **1.  Treating Sources[1]**

A February, 2008 health summary by the VA Medical Center in Detroit, Michigan states that Plaintiff experienced hypertension, obesity, diabetes mellitus, and hyperlipidemia (Tr. 217). Examination notes state that he currently weighed 290 pounds (Tr. 199-200). He denied upper extremity problems but reported numbness, tingling, and burning in both legs and feet (Tr. 200). The same month, results of a hearing test showed mild hearing loss on the right and mild to moderate loss on the left (Tr. 215). Treating notes from the same month showed the absence of diabetic retinopathy but mild retinopathy as a result of hypertension (Tr. 212). In April, 2009, Plaintiff opined that he was not restricted by diabetes and had been able to do his former work because he had access to a bathroom (Tr. 195). May, 2009 VA records state that Plaintiff's symptoms of PTSD were "mild in nature," despite a 30 % disability rating as a result of the condition (Tr. 203, 209). December, 2009 treating notes

---

[1] Treating records for conditions unrelated to the disability claim, reviewed in full by the undersigned, are omitted from the present discussion.

state that Plaintiff had gained weight since retiring in April, 2009, noting that he admitted to consuming "Snickers" and soft drinks daily (Tr. 302). Plaintiff was advised to begin a calorie reduction plan (Tr. 302).

April, 2010 ophthalmological records by the VA note that Plaintiff had an 80 percent VA disability due to various complications of diabetes and PTSD (Tr. 260). May, 2010 VA records show that a laser procedure to the eyes was performed without complications (Tr. 255-256). In December, 2010, Plaintiff reported that his vision was stable (Tr. 257).

**2. Consultive and Non-examining Sources**

In November, 2011, psychiatrist F. Qadir, M.D. performed a consultative examination on behalf of the SSA (Tr. 225-227). Plaintiff reported PTSD as a result of combat duty in Vietnam, but was able to cook and perform light household chores (Tr. 225). Dr. Qadir observed good hygiene and grooming with an organized thought process (Tr. 226). Dr. Qadir assigned him a GAF of 60-65[2] with a "fair" prognosis (Tr. 226).

The same month, internist Sonia Ramirez, M.D. examined Plaintiff on behalf of the SSA, noting diminished sensation in the lower extremities but "no problems with . . . standing, walking on toes and heels" or balance (Tr. 231). Dr. Ramirez observed a normal

---

[2] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* (*DSM-IV-TR*), 34(4th ed.2000). GAF scores in the range of 61-70 indicate "some mild [psychological] symptoms or some difficulty in social, occupational, or school functioning." *Id.*

gait (Tr. 231). Range of motion studies were unremarkable (Tr. 233-234).

The following month, Rose Moten-Solomon performed a Psychiatric Review Technique on behalf of the SSA, noting the presence of a non-severe affective disorder (Tr. 240, 243).

### C. Vocational Testimony

VE Julie Lynn Bubbles classified Plaintiff's past work as a machinist as exertionally medium and skilled and work as a tool crib clerk (as performed) as light/semiskilled[3] (Tr. 52). The VE testified that the job of tool crib clerk, as performed by Plaintiff, would not prevent hourly bathroom breaks in addition to a morning, lunch, and afternoon break (Tr. 52). She found that the job of tool crib clerk would allow the individual to be "off task" up to 15 percent of the workday (Tr. 52). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 52).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Poulose found that Plaintiff experienced the severe impairments of high blood pressure and diabetes mellitus but that the conditions did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

---

[3]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

1 (Tr. 15-16). The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels" limited by the need to use the restroom hourly (Tr. 16). Citing the VE's job findings, the ALJ found that Plaintiff could perform his past relevant work as a machinist and tool crib clerk (Tr. 19).

The ALJ discounted Plaintiff's claims of disability, citing medical records supporting her finding that symptoms of diabetes mellitus did not prevent performance of his past relevant work (Tr. 16). She noted that examinations performed in both April and November, 2009 showed that Plaintiff had good balance and a normal gait (Tr. 17). She cited April, 2010 treatment notes showing that blood sugar levels were well controlled (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.

1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Plaintiff's Alleged Limitations

Plaintiff argues first that the ALJ erred by omitting diabetic neuropathy of the lower extremities from the Step Two "severe" impairments. *Plaintiff's Brief* at 4-8, *Docket #9*. He faults the ALJ for failing to reference diabetic neuropathy in the hypothetical question to the VE or the RFC found in the administrative opinion. *Id.* at 5-7. Plaintiff also claims that the hypothetical question did not include the need to use the bathroom frequently, noting that the omission of the limitation stood at odds with the RFC stating that he required hourly restroom breaks *Id.* at 8.

At Step Two of the administrative sequence, an impairment can be considered "not severe ... only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Farris v. Secretary of HHS,* 773 F.2d 85, 90 (6th Cir.1985)(citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)); 20 CFR § 416.921(a).

Plaintiff's claim of limitations as a result of neuropathy, if credited, would qualify as "work-related" limitations. However, the omission of the word "neuropathy" from the severe impairments does not warrant remand. While neuropathy is not included among the Step Two findings, the ALJ found that diabetes mellitus was a severe impairment (Tr. 15). Plaintiff does not dispute that the alleged symptoms of neuropathy were a complication of

diabetes mellitus.

Moreover, the ALJ specifically addressed the alleged lower extremity limitations as a result of neuropathy at the subsequent steps of the sequential analysis. In finding that the condition of diabetes mellitus did not meet or medically equal a listed impairment at Step Three, the ALJ noted that "the medical evidence of record fail[ed] to demonstrate neuropathy indicated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait and station" (Tr. 16 citing Listings 9.08, 11.00C). This finding is well supported by the treating and consultative records.

The ALJ once again referenced the limitations alleged as a result of neuropathy in providing a rationale for her rejection of Plaintiff's claims, noting that while objective testing showed "moderate peripheral neuropathy," both April, 2009 treating records and November, 2011 consultative findings show that Plaintiff had "no problems standing or walking" and had a normal gait with good balance and coordination (Tr. 17). Because the ALJ addressed both the allegations of neuropathy and adequately discussed her reasons for discounting them, the omission of "neuropathy" at Step Two does not constitute error, much less grounds for remand. *See Pompa v. Commissioner of Social Sec.,* 73 Fed.Appx. 801, 803, 2003 WL 21949797, *1 (6th Cir. 2003)(unpublished)(a Step Two omission of "little consequence," provided that the ALJ consider "all impairments, severe and non-severe," in crafting the RFC).

For the same reasons, the ALJ did not err in omitting reference to neuropathy in the hypothetical limitations posed to the VE. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118–119 (6th Cir.1994)(ALJ not obliged to include discredited allegations of limitation in hypothetical to VE). Plaintiff's claim that the ALJ did not consider his need for frequent bathroom breaks during the vocational testimony is contradicted by the VE's statement that Plaintiff's former work would allow Plaintiff to be "off task" up to 15 percent of the workday, in addition to morning, lunch, and afternoon breaks (Tr. 52).

Substantial evidence also supports the ALJ's credibility determination. Plaintiff contends that the ALJ's finding that he could mow his front lawn (Tr. 17) mis-characterized his testimony that the task required two days to complete. *Plaintiff's Brief* at 6-7 (citing Tr. 34). However, the ALJ's finding that Plaintiff mowed his front lawn on occasion was accompanied by her acknowledgment that he alleged problems included "standing and walking due to foot numbness and knee pain" (Tr. 17). The ALJ rejected claims of significant exertional limitations by citing Plaintiff's April, 2009 admission that he did not experience work limitations other than the need to use the bathroom frequently (Tr. 17, 195, 200) and Sonia Ramirez's November, 2011 consultative report states that Plaintiff did not experience problems standing, heel and toe walking, balancing, or walking (Tr. 17, 233-234). Because the ALJ did not err in omitting neuropathy from the Step Two findings, RFC, and hypothetical question, remand on this basis is not warranted.

### B. Import of the VA Disability Findings

Plaintiff also argues that the ALJ erred by failing to consider an April, 2010 notation by an optometrist indicating that he had an 80 percent service-connected disability. *Plaintiff's Brief* at 8 (citing Tr. 260).

A disability determination by another agency is not binding on the Commissioner. A "decision by any ... other governmental agency about whether you are disabled ... is based upon its rules and is not our decision about whether you are disabled." SSR 06-03p, 2006 WL 2329939, *6 (2006)(citing 20 C.F.R. § 404.1504). Nonetheless, an ALJ is required to consider a finding of disability by another agency. *Id.* Sixth Circuit case law suggests that a 100 percent VA disability determination may be entitled to some weight. *Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir.1984).

First, I note that the optometrist's secondhand reference to an 80 percent disability rating is unaccompanied by the determination itself or any rationale for the VA finding. Plaintiff has not produced such evidence. "The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir.1990); 42 U.S.C. § 423(d). Standing alone, Plaintiff's failure to produce such a finding defeats this argument.

Assuming the veracity of the optometrist's reference, the 80 percent disability rating, unlike a 100 percent VA finding, does not by itself imply that a claimant is unable to perform any work and significantly, none of the VA sources state that Plaintiff was incapable of

gainful employment. "A veteran is permanently and totally disabled if he or she suffers from a disability which would render it impossible for the average person to follow a substantially gainful occupation . . ." *Werley v. West,* 1998 WL 99277, *1 (Vet.App. February 27, 1998)(citing 38 U.S.C. § 1502(a)(3)). In the absence of a 100 percent disability finding by the VA, the ALJ is not required to adopt or even consider the VA's determination. *See Green v. Commissioner of Social Sec.*, 2008 WL 3978476, *4 (W.D.Mich.2008)(no case law in this Circuit "reversing an ALJ's decision for failing to give weight to a VA decision of anything less than total disability").[4] While the VA presumably found that limitations as a result of PTSD and diabetes mellitus created some degree of limitation, Plaintiff was not deemed disabled from all work.

Plaintiff's argument is further defeated by the fact that none of the VA records can be interpreted to support a claim he was disabled from performing his former work. The record cited by Plaintiff indicates that he had a 30 percent rating as a result of PTSD and 50 percent disability as a result of diabetes related symptoms (Tr. 260). Nonetheless the VA records presumably used to support such a finding, as a whole, tend to undermine rather than support the DIB claim.

---

[4] A number of District Courts in this Circuit have cited SSR 06-03p for the proposition that a VA disability finding must be considered by the ALJ. *Shumaker v. Commissioner of Social Sec.,* 2013 WL 441060, *14 (N.D.Ohio January 15, 2013), *Lariccia v. Commissioner of Social Sec. Admin.,* 2012 WL 3150856, *10 (N.D.Ohio, August 2, 2012), *Briskey v. Astrue*, 2011 WL 672553, *3-4 (N.D.Ohio February 15, 2011), *Partin v. Commissioner of Social Sec.,* 2010 WL 3779304, *2 (W.D.Mich.,September 22, 2010). However, in all of them, the claimant had received a 100 percent disability rating by the VA.

Because the ALJ's decision was well articulated and easily within the "zone of choice" accorded the administrative fact finder, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be DENIED and that Defendant's Motion for Summary Judgment be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                       s/R. Steven Whalen
                                       R. STEVEN WHALEN
                                       UNITED STATES MAGISTRATE JUDGE

Dated:  November 7, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 7, 2013.

                                       s/Carolyn Ciesla for Michael Williams
                                       Case Manager